J-S60014-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: L.K. AND E.K., MINOR CHILDREN | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: D.K., FATHER | : | |
| | : | No. 322 MDA 2019 |

Appeal from the Decrees Dated January 10, 2019
In the Court of Common Pleas of Northumberland County Orphans' Court
at No(s): Adoptee 49-2017,
Adoptee 50-2017

BEFORE: SHOGAN, J., STABILE, J., and PELLEGRINI, J.[*]

MEMORANDUM BY SHOGAN, J.: **FILED MAY 21, 2020**

D.K., Father, appeals from the decrees dated January 10, 2019,[1]

granting the petitions filed by the Northumberland County Children and Youth

Services ("CYS" or the "Agency") to involuntarily terminate his parental rights

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] There is no notation on the docket that notice was given and that the decrees were entered for purposes of Pa.R.C.P. 236(b). **See Frazier v. City of Philadelphia**, 557 Pa. 618, 621, 735 A.2d 113, 115 (1999) (holding that "an order is not appealable until it is entered on the docket with the required notation that appropriate notice has been given"); **see also** Pa.R.A.P. 108(a) (entry of an order is designated as "the day on which the clerk makes the notation in the docket that notice of entry of the order has been given as required by Pa.R.C.P. 236(b)"). Thus, the decrees were not entered, the appeal period was not triggered, and the appeal is timely.

to his minor daughters, L.K., a/k/a L.T.K., born in December of 2014, and E.K., a/k/a E.A.K., born in July of 2010 (collectively "the Children"),[2] pursuant to the Adoption Act, 23 Pa.C.S. § 2511(1), (2), (5), (8), and (b).[3]  In addition, Father's counsel, Attorney Marc Lieberman ("Counsel"), has filed with this Court a motion for leave to withdraw as counsel and amended brief pursuant to **Anders v. California**, 386 U.S. 738, 744 (1967).  We grant Counsel's motion to withdraw and affirm the decrees.

On September 21, 2017, CYS filed petitions to involuntarily terminate the parental rights of Father and Mother to the Children.  On May 14, 2018,

---

[2] On October 24, 2018, the Children's appointed legal interests counsel, Attorney Matthew Slivinski, filed a Position Of The Minor Child regarding L.K., stating she was three years old and not competent to express a well-reasoned preference, so no position could be given as to her wishes.  On that same date, Attorney Slivinski filed a Position Of The Minor Child regarding E.K., stating she was eight years old and competent to express a well-reasoned preference in favor of the termination of her parents' parental rights and adoption by her current resource family, with whom she wants to live forever, and calls "Mom" and "Dad."

[3] We note that Father failed to file separate notices of appeal for the termination decrees regarding each of the Children. **See Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018) (holding that appeal must be quashed where single notice of appeal filed from two separate docket numbers).  We will not quash this appeal, however, because on February 22, 2019, this Court, in **In re: M.P.**, 204 A.3d 976, 980-981 and n.2 (Pa. Super. 2019), explained that **Walker** applies in civil and family cases, as well as criminal cases, and the instant notice of appeal was filed on February 15, 2019, prior to the clarification in the **M.P.** decision.

the trial court appointed Attorney Slivinski to represent the legal interests of the Children and their older female sibling, K.K., a/k/a K.J.K.,[4] who is not a party to this appeal.

On September 21, 2018,[5] the trial court held an evidentiary hearing on the involuntary termination petitions and entered an order that permitted Attorney Michael O'Donnell to serve as substitute counsel for the Children on that date only, retaining Attorney Slivinski as legal interests counsel for the Children. At the hearing, CYS presented the testimony of the Children's maternal grandmother, L.S. ("Maternal Grandmother"). N.T., 9/21/18, at 5. CYS then presented the testimony of Father, who was incarcerated at SCI–Forest, as if on cross-examination. *Id.* at 16. Next, CYS offered the testimony of Danielle Miccio, a CYS caseworker assigned to the Children's case. *Id.* at 32-33. CYS also presented the testimony of Sherry Moroz, an expert in forensic interviewing of children and child abuse. *Id.* at 47. Finally, CYS offered Mother's testimony. *Id.* at 60. Father did not call any witnesses. On

---

[4] Our prior Memorandum remanding the matter, filed on January 16, 2020, at page 2, had a typographical error stating that the Children's older sibling was L.J.K. However, the older sibling is K.J.K., a/k/a K.K., who was born in approximately 2000. N.T., 9/21/18, at 63.

[5] Our Memorandum remanding the appeal filed on January 16, 2020, at page 2, contained a typographical error stating that the evidentiary hearing was held on September 17, 2018, but it was held on September 21, 2018.

January 10, 2019, the trial court terminated Father's parental rights to each of the Children in separate final decrees.[6]

On February 15, 2019, Father filed a single Notice of Appeal *Nunc Pro Tunc* from the decrees terminating his parental rights to the Children, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). Father also filed an affidavit of his counsel as to his request for appeal *nunc pro tunc*. In an order filed on May 2, 2019, the trial court denied Father's petition to appeal *nunc pro tunc*, but, as noted *supra*, the appeal period was not triggered due to the lack of a docket entry in compliance with Pa.R.C.P. 236.

On July 3, 2019, Counsel filed a motion to withdraw, along with a ***Turner/Finley*** Letter Brief.[7] On July 17, 2019, this Court entered an order directing Counsel to properly file a motion to withdraw and brief in accordance with ***Anders*** and ***Commonwealth v. McClendon***, 434 A.2d 1185 (Pa. 1981).

---

[6] Also on January 10, 2019, the trial court issued an order regarding Mother, bearing both docket numbers for the cases regarding E.K. and L.K., continuing the hearing previously scheduled for September 21, 2018, to occur on January 18, 2019. However, on January 11, 2019, CYS filed petitions to confirm Mother's consents to adoption, along with Mother's voluntary relinquishments of her parental rights and consents to adoption. The trial court scheduled a hearing on Mother's petition for voluntary relinquishment to be held on January 24, 2019, and CYS filed a notice of the hearing. Following the January 24, 2019 hearing, the trial court entered separate final decrees terminating Mother's parental rights on her voluntary relinquishment for each of the Children.

[7] ***Commonwealth v. Turner***, 544 A.2d 927 (Pa. 1988), and ***Commonwealth v. Finley***, 550 A.2d 213 (Pa. Super. 1988).

On July 24, 2019, Counsel filed the **Anders** brief, and on July 25, 2019, Counsel filed his motion to withdraw.

On July 29, 2019, we remanded this matter, retaining jurisdiction, for the completion of the certified record, in accordance with **Commonwealth v. Vilsaint**, 893 A.2d 753, 758 (Pa. Super. 2006) (stating "Counsel cannot fulfill the mandates of **Anders** unless he has reviewed the entire record."). On August 1, 2019, Father, acting *pro se*, filed a "Response to Petition to Withdraw from Representation." Subsequently, on August 15, 2019, we again remanded the matter and retained jurisdiction, directing the trial court to make the notes of testimony part of the record and ensure that a copy was transmitted to Father. The order further provided that thereafter, Counsel would have seven days in which to file an amended motion to withdraw and an **Anders** brief. On September 12, 2019, the trial court filed a supplemental record with our Court.

On September 12, 2019, Counsel filed an amended motion to withdraw and an amended **Anders** brief. On October 8, 2019, Father, acting *pro se*, filed his "Appellant's Response to Counsel's Motion to Withdraw and Accompanying **Anders** Brief," alleging that Counsel provided ineffective assistance both at trial and on appeal and asserting that the trial court judge should have recused himself or been removed from the case. As there was no trial court opinion before this Court, we remanded the case to the trial court for the preparation of a Pa.R.A.P. 1925(a) opinion. On February 27,

2020, the trial court filed its opinion in the trial court and on March 5, 2020, forwarded its opinion to this Court. This appeal is now ripe for our disposition.

Before we address the merits of Father's appeal, we must address Counsel's motion to withdraw. In *In re V.E.*, 611 A.2d 1267, 1274-1275 (Pa. Super. 1992), this Court extended the *Anders* principles to appeals involving the termination of parental rights.

Pursuant to *Anders*, when counsel believes an appeal is frivolous and wishes to withdraw representation, he must do the following:

> (1) petition the court for leave to withdraw stating that after making a conscientious examination of the record . . ., counsel has determined the appeal would be frivolous;
>
> (2) file a brief referring to anything that might arguably support the appeal. . .; and
>
> (3) furnish a copy of the brief to defendant and advise him of his right to retain new counsel, proceed *pro se,* or raise any additional points he deems worthy of the court's attention.

*In re S.M.B.*, 856 A.2d 1235, 1237 (Pa. Super. 2004) (citation omitted). "When considering an *Anders* brief, this Court may not review the merits of the underlying issues until we address counsel's request to withdraw." *Id*.

In *Commonwealth v. Santiago*, 978 A.2d 349 (Pa. 2009), our Supreme Court addressed the second requirement of *Anders*, *i.e.*, the contents of an *Anders* brief, and required that the brief:

> (1)    provide a summary of the procedural history and facts, with citations to the record;
>
> (2)    refer to anything in the record that counsel believes arguably supports the appeal;

(3) set forth counsel's conclusion that the appeal is frivolous; and

(4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361. "After an appellate court receives an *Anders* brief and is satisfied that counsel has complied with the aforementioned requirements, the Court then must undertake an independent examination of the record to determine whether the appeal is wholly frivolous." *S.M.B.*, 856 A.2d at 1237.

With respect to the third requirement of *Anders*, that counsel inform the defendant of his rights in light of counsel's withdrawal, this Court has held that counsel must "attach to their petition to withdraw a copy of the letter sent to their client advising him or her of their rights." *Commonwealth v. Millisock*, 873 A.2d 748, 752 (Pa. Super. 2005).

Counsel has complied with each of the requirements of *Anders*. Counsel indicates that he conscientiously examined the record and determined that Father's appeal has no meritorious issues, and the appeal is wholly frivolous. Further, Counsel's amended *Anders* brief comports with the requirements set forth by our Supreme Court in *Santiago*. Finally, we observe that Counsel attached to his motion to withdraw a copy of a letter from Counsel to Father, in compliance with *Millisock*. Thus, we will proceed with our review of the merits of Father's appeal.

In the amended **Anders** brief, Counsel presents the following issues:

I. Whether the lower court erred in terminating the parental rights of [Father] ..., when the petitioners did not prove by clear and convincing evidence the grounds for termination?

II. Whether an application to withdraw as counsel should be granted where counsel has investigated the possible grounds for appeal and finds the appeal frivolous?

III. Whether an application to withdraw as counsel should be granted where counsel has reviewed the termination of parental rights trial transcript and finds the appeal frivolous?

Amended **Anders** Brief at 3 (renumbered for disposition).

We first address whether the trial court properly terminated Father's parental rights. Amended **Anders** Brief at 16-24. Father asserts that CYS did not establish grounds for termination by clear and convincing evidence.

In reviewing an appeal from an order terminating parental rights, we adhere to the following well-established standard:

[A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. **In re: R.J.T.**, 608 Pa. 9, 9 A.3d 1179, 1190 (2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. **Id.**; [**In re:**] **R.I.S.**, 36 A.3d [567,] 572 [(Pa. 2011) (plurality opinion)]. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. **Id.**; **see also Samuel Bassett v. Kia Motors America, Inc.**, ___ Pa. ___, 34 A.3d 1, 51 (2011); **Christianson v. Ely**, 575 Pa. 647, 838 A.2d 630, 634 (2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. **Id.**

As we discussed in **R.J.T.**, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. **R.J.T.**, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. **In re Adoption of Atencio**, 539 Pa. 161, 650 A.2d 1064, 1066 (1994).

**In re Adoption of S.P.**, 47 A.3d 817, 826-827 (Pa. 2012).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. **In re R.N.J.**, 985 A.2d 273, 276 (Pa. Super. 2009). Moreover, we have explained, "The standard of clear and convincing evidence is defined as testimony that is so 'clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.'" **Id.** (quoting **In re J.L.C.**, 837 A.2d 1247, 1251 (Pa. Super. 2003)).

This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of Section 2511(a). **In re B.L.W.**, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). We will address Section 2511(a)(1), (2), and (b), which provides as follows:

**§ 2511. Grounds for involuntary termination**

- 9 -

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

> (1)  The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(1), (2), and (b).

With respect to Subsection 2511(a)(1), our Supreme Court has held as

follows:

> Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Adoption of Charles E.D.M.*, 708 A.2d 88, 92 (Pa. 1988).

> Further, this Court has stated:

> The trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his or her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re B.,N.M.*, 856 A.2d 847, 854-855 (Pa. Super. 2004) (citations omitted).

To satisfy the requirements of Subsection 2511(a)(2), the moving party must produce clear and convincing evidence regarding the following elements: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied. *In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003). The grounds for termination of parental rights under Subsection 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties. *In re A.L.D.* 797 A.2d 326, 337 (Pa. Super. 2002).

Our Supreme Court has addressed the termination of parental rights of incarcerated parents under Subsection 2511(a)(2), stating:

> Incarceration is a factor, and indeed can be a determinative factor, in a court's conclusion that grounds for termination

- 11 -

exist under § 2511(a)(2) where the repeated and continued incapacity of a parent due to incarceration has caused the child to be without essential parental care, control or subsistence and [ ] the causes of the incapacity cannot or will not be remedied.

*Adoption of S.P.*, 47 A.3d at 828.

In *Adoption of S.P.*, our Supreme Court reiterated the standard with which a parent must comply in order to avoid a finding that he abandoned his child.

Applying [*In re Adoption of McCray*, 331 A.2d 652, 655 Pa. (1975),] the provision for termination of parental rights based upon abandonment, now codified as § 2511(a)(1), we noted that a parent "has an affirmative duty to love, protect and support his child and to make an effort to maintain communication and association with that child." *Id*. at 655.

* * *

Where the parent does not exercise reasonable firmness in declining to yield to obstacles, his other rights may be forfeited.

*Adoption of S.P.*, 47 A.3d at 828 (quoting *In re: Adoption of McCray*, 331 A.2d at 655)) (footnotes and internal quotation marks omitted). Also, in *Adoption of S.P.*, our Supreme Court revisited its decision in *R.I.S.*, and stated:

[W]e now definitively hold that incarceration, while not a litmus test for termination, can be determinative of the question of whether a parent is incapable of providing "essential parental care, control or subsistence" and the length of the remaining confinement can be considered as highly relevant to whether "the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent," sufficient to provide grounds for termination pursuant to 23 Pa.C.S. § 2511(a)(2). *See e.g. Adoption of J.J.*, 515 A.2d at 891 ("A parent who is incapable of performing parental duties is just as parentally unfit

- 12 -

as one who refuses to perform the duties."); [*In re:*] *E.A.P.*, 944 A.2d [79,] 85 [(Pa. Super. 2008)] (holding termination under § 2511(a)(2) supported by mother's repeated incarcerations and failure to be present for child, which caused child to be without essential care and subsistence for most of her life and which cannot be remedied despite mother's compliance with various prison programs). If a court finds grounds for termination under subsection (a)(2), a court must determine whether termination is in the best interests of the child, considering the developmental, physical, and emotional needs and welfare of the child pursuant to § 2511(b). In this regard, trial courts must carefully review the individual circumstances for every child to determine, *inter alia*, how a parent's incarceration will factor into an assessment of the child's best interest.

*Adoption of S.P.*, 47 A.3d at 830–831. Thus, the Supreme Court definitively ruled in *Adoption of S.P.* that the trial court may examine the effect of a parent's incarceration in ruling on a termination petition.

This Court has stated that the focus in terminating parental rights under Section 2511(a) is on the parent, but it is on the child pursuant to Section 2511(b). *See In re Adoption of C.L.G.*, 956 A.2d 999, 1008 (Pa. Super. 2008) (*en banc*). In reviewing the evidence in support of termination under Section 2511(b), our Supreme Court has stated as follows:

[I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "intangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, 620 A.2d [481,] 485 [(Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

- 13 -

*In re: T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

When evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation." *In re Z.P.,* 994 A.2d 1108, 1121 (Pa. Super. 2010) (internal citations omitted). Although it is often wise to have a bonding evaluation and make it part of the certified record, "[t]here are some instances ... where direct observation of the interaction between the parent and the child is not necessary and may even be detrimental to the child." *In re K.Z.S.*, 946 A.2d 753, 762 (Pa. Super. 2008).

A parent's abuse and neglect are likewise a relevant part of this analysis:

[C]oncluding a child has a beneficial bond with a parent simply because the child harbors affection for the parent is not only dangerous, it is logically unsound. If a child's feelings were the dispositive factor in the bonding analysis, the analysis would be reduced to an exercise in semantics as it is the rare child who, after being subject to neglect and abuse, is able to sift through the emotional wreckage and completely disavow a parent .... Nor are we of the opinion that the biological connection between [the parent] and the children is sufficient in of itself, or when considered in connection with a child's feeling toward a parent, to establish a *de facto* beneficial bond exists. The psychological aspect of parenthood is more important in terms of the development of the child and [his] mental and emotional health than the coincidence of biological or natural parenthood.

*In re K.K.R.-S.*, 958 A.2d 529, 535 (Pa. Super. 2008) (internal citations and quotation marks omitted). Thus, the court may emphasize the safety needs of the child. *See K.Z.S.*, 946 A.2d at 763 (affirming involuntary termination of parental rights, despite existence of some bond, where placement with

mother would be contrary to child's best interests). "[A] parent's basic constitutional right to the custody and rearing of ... her child is converted, upon the failure to fulfill ... her parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." ***In re B.,N.M.***, 856 A.2d 847, 856 (Pa. Super. 2004) (internal citations omitted).

In its Rule 1925(a) opinion, the trial court stated the following with regard to its determination to terminate Father's parental rights to the Children:

> The testimony and unchallenged evidence offered at trial supports the conclusion that … Father sexually molested his own children and that he is serving a period of incarceration in a State Correctional Facility as a result thereof[.] (N.T. 09/21/18, Entire Document). The Agency caseworkers testified that the [C]hildren were originally placed out of … Father's home on August 3, 2016, and[,] at the time of the Termination of Parental Rights hearing, they had been in foster care for twenty-five (25) months[,] and that both parents, including … Father, were incarcerated on the charges subsequently brought against them, resulting from the sexual abuse allegations for abusing their own children. (N.T. 09/21/18 P. 37)[.] Nothing was offered to support a conclusion that Father had done anything to work toward a return of any of the children. (N.T. 09/21/18 Entire Document).

> Further, while Father had an opportunity to testify on his own behalf and/or call witnesses on his own behalf, he did not. (N.T. 09/21/18, P. 16-32). In addition, the witnesses on behalf of the Agency offered extensive testimony to support the conclusion by the [trial court] that Father had sexually molested his minor children, to include E.K.

> Specifically, the Agency Caseworker testified that the initial reports of sexual abuse by Father against his minor children [were] initially "indicated" but subsequently, "founded", and that Father was currently incarcerated as a result of the charges

- 15 -

brought against him due to the sexual abuse of his own children. (N.T. 09/21/18), P. 34-35, 37). In addition, Sherry Moroz, an expert witness in the area of child abuse and [after] conducting forensic interviews of children, testified she had interviewed E.K., as well as her older sister, K.K., and that[,] based on these interviews, her observations and her experience, she found them to be credible and that[,] to a reasonable degree of scientific and professional certainty, Father had molested both E.K. and her older sister, K.K. (N.T. 09-21-18, P. 43-48, 55-56).

In addition, the natural [m]other of the minor children, [Mother], testified against … Father, waiving her spousal privilege, and admitted that she personally observed Father having sexual intercourse with their daughter, K.K., a minor, when she was approximately twelve (12) or thirteen (13), that Father had locked [Mother] in an adjacent bedroom while he had sex with his oldest daughter[, D.K.F.,] and [Mother] could hear them having sex, that Father verbally admitted to [Mother] that he had raped his oldest daughter [D.K.F.,] and that he had "done stuff", meaning sexual stuff, to their daughter, E.K." [sic] (N.T. 09/21/18, P. 61-63, 65-66). Finally, Mother testified that there was an understanding between her and Father that[,] when he would summon their minor children to him, is [sic] was because he wanted to have sex with them. (N.T. 09/21/18, P. 74).

"It is a well-established rule in civil proceedings that a party's failure to testify can support an inference that whatever testimony he would have given would have been unfavorable to him." **See Beers v. Muth**, 395 Pa. 624, 151 A.2d 465 (1959). "Our case law indicates that the inference to be drawn from a party's failure to testify served to corroborate the evidence produced by the opposing party." **See Dommes v. Zuroski**, 350 Pa. 206, 209, 38 A.2d 73, 75 (1944).

As such, the reasonable conclusion [the trial court] reached, [sic] was that Father was invoking the 5th Amendment [of the United States Constitution] and refused to answer the questions posed, including "did you rape or sexually molest your own children?" … because the truthful testimony he would have given would have been unfavorable to him.

For all the foregoing reasons, [the trial court] did not abuse its discretion, commit an error of law, or lack competent evidence

to support its finding that the Agency met its burden of proof regarding the first prong of the test. . . .

Once the Agency met its burden of proof under the first prong of the test, [the trial court] then had to consider the second prong of the test - a determination of the needs and welfare of the [C]hildren under the standard of best interests of the child. The [trial court] made a clear finding that termination of Father's parental rights was in the best interest of the [C]hildren. The Agency['s] burden of proof under this prong of the test was supported by the same facts cited above as supporting the first prong of the test ... .

Trial Court Opinion, 2/27/20, at 2-4 (unpaginated).

Likewise, after a careful review of the record, we conclude that ample evidence was presented to support the termination of Father's parental rights to the Children. With regard to Subsection 2511(a)(1), we find that there was competent, clear and convincing evidence to support the trial court's conclusion that the Children had been removed from Father's care and custody for more than six months at the time that CYS filed the termination petitions in September of 2017. Father failed to perform his parental duties in that he had sexually abused several of his children and was serving a criminal sentence of imprisonment for his crimes. At the time of the termination hearing, there was no evidence that Father had any contact with the Children during the twenty-five months they had been removed from his care. Father refused to offer an explanation for his conduct.

Regarding Subsection 2511(a)(2), we find that there was competent evidence to support the trial court's conclusion that Father engaged in a repeated and continued incapacity, abuse, neglect, or refusal to parent the

Children, in that he sexually abused several of his own children. Father's incapacity, abuse, neglect, or refusal caused the Children to be without essential parental care, control, or subsistence necessary for their physical or mental well-being. There is nothing in the record to support a conclusion that Father had done anything to work toward a return to any of the children. Thus, the causes of Father's incapacity, abuse, neglect or refusal cannot or will not be remedied by Father. *Adoption of S.P.*, 47 A.3d at 826-827.

Regarding Section 2511(b), we find competent evidence to support the trial court's conclusion that any bond between the Children and Father is a harmful bond, and that termination of Father's parental rights serves the Children's needs and welfare and is in their best interests. After a careful review of the record in this matter, we find the record supports the trial court's factual findings, and the court's conclusions are not the result of an error of law or an abuse of discretion. *Adoption of S.P.*, 47 A.3d at 826-827; *T.S.M.*, 71 A.3d at 267.

Before we consider the final two issues presented in the amended *Anders* brief pertaining to whether Counsel should be permitted to withdraw, we will address the various allegations of error presented by Father in his *pro se* filing. As previously stated, Father filed a response to Counsel's motion to withdraw and *Anders* brief. In his *pro se* document, Father alleges that Counsel was ineffective in his representation.

In ***In re: J.T.***, 983 A.2d 771, 774 (Pa. Super. 2009), this Court stated, "The right to counsel . . . is the right to effective assistance of counsel." Where a party raises ineffective assistance of counsel in a termination of parental rights case, "we then review the record as a whole to determine whether or not the parties received a fundamentally fair hearing; a finding that counsel was ineffective is made only if the parent demonstrates that counsel's ineffectiveness was the cause of the decree of termination." ***Id.*** at 775 (internal quotation marks omitted). "Mere assertion of ineffectiveness of counsel is not the basis of a remand or rehearing, and despite a finding of ineffectiveness on one or more aspects of the case, if the result would unlikely have been different despite a more perfect stewardship, the decree must stand." ***In the Interest of K.D.***, 871 A.2d 823, 828 (Pa. Super. 2005) (quoting ***In re Adoption of T.M.F.***, 573 A.2d 1035, 1044 (Pa. Super. 1990) (*en banc*)).

Moreover, in assessing Father's ineffectiveness claims, we are cognizant of Father's burden to show that Counsel's action or inaction was not based on a reasonable trial strategy. ***See Commonwealth v. Basemore***, 744 A.2d 717, 735 (Pa. 2000) ("Where counsel has made a strategic decision after a thorough investigation of law and facts, it is virtually unchallengeable."); ***see also Commonwealth v. Williams***, 131 A.3d 440, 454 (Pa. 2016) (stating that success on a claim of ineffective assistance of counsel requires the claimant to prove that counsel's action or inaction was not based upon a

reasonable trial strategy). Accordingly, our review of Father's ineffective assistance of counsel claim is inextricably linked to our determination of whether the trial court decrees are supported by the record.

Father argues that Counsel's ineffectiveness prevented Father from attending the continued termination hearing where Mother's voluntary terminations were accepted by the trial court. Response to Motion to Withdraw, 10/10/19, at 2-3. However, any physical absence of Father at the time of Mother's entry of her voluntary termination pleas did not have a causal effect on the involuntary termination of Father's parental rights. The entry of the decrees on January 24, 2019, terminating Mother's parental rights, would not have changed the outcome of Father's own termination case, as the decrees terminating his parental rights were entered on January 10, 2019. These ineffectiveness allegations were not the cause of the decrees of termination of Father's parental rights. *J.T.*, 983 A.2d at 775. Accordingly, this claim fails.

Father also challenges Counsel's alleged failure to object to the trial court's admission of Ms. Moroz's testimony regarding whether she found the several children credible in their forensic interviews.[8] Response to Motion to Withdraw, 10/10/19, at 3. To the contrary, the notes of testimony reflect that

---

[8] This Court has held that issues not raised in the lower court are waived and cannot be raised for the first time on appeal. *In re C.P.*, 901 A.2d 516, 522 (Pa. Super. 2006); Pa.R.A.P. 302.

Counsel raised numerous objections to Ms. Moroz's testimony concerning the Children's forensic interviews and to the trial court's admission of Ms. Moroz's impressions of their interviews and hearsay statements. N.T., 9/21/18, at 36-53. Counsel's participation with regard to the questioning of Ms. Moroz was not the cause of the decrees of termination of Father's parental rights. *J.T.*, 983 A.2d at 775. Therefore, Father's allegation fails.

Father also challenges Counsel's failure to object to the trial court's admission of Mother's testimony. Response to Motion to Withdraw, 10/10/19, at 3. Father asserts that Counsel's cross-examination of Mother was limited to an attempt to establish that, from her plea deal, Mother derived a benefit with regard to her sentence. To the contrary, the notes of testimony reflect that Counsel vigorously objected to the admission of Mother's testimony as barred by the spousal privilege. Counsel continued to object on that basis even after the trial court overruled Counsel's objection on the basis of 23 Pa.C.S. § 6381(c).[9] N.T., 9/21/18, at 57-61. Counsel's cross-examination of Mother, which was directed at establishing that she received a lesser sentence of incarceration in exchange for her pleas of *nolo contendere*, was a matter of legal strategy. Hence, this challenge to Counsel's assistance lacks merit.

---

[9] 23 Pa.C.S. § 6381(c) states that "a privilege of confidential communication between husband and wife … shall not constitute grounds for excluding evidence at any proceeding regarding child abuse or the cause of child abuse."

Father further contends that Counsel failed to object to hearsay testimony of Ms. Moroz and Mother. Response to Motion to Withdraw, 10/10/19, at 3. However, the notes of testimony reflect that Counsel raised numerous objections to Ms. Moroz's testimony concerning the Children's forensic interviews and to the trial court's admission of Ms. Moroz's testimony based on hearsay statements of the interviewed children of Father. N.T., 9/21/18, at 36-53. Counsel also made objections to Mother's testimony on the basis that CYS was asking leading questions, and that Mother's responses included hearsay statements of Father's children. *Id.* at 61-67. Accordingly, the record belies Father's allegations.

Moreover, our Rules of Evidence define hearsay as a statement that:

(1) the declarant does not make while testifying at the current trial or hearing; and

(2) a party offers in evidence to prove the truth of the matter asserted in the statement.

Pa.R.E. 801(c).

We have stated:

As a general rule, hearsay is inadmissible, because such evidence lacks guarantees of trustworthiness fundamental to our system of jurisprudence. The rule against admitting hearsay evidence stems from its presumed unreliability, because the declarant cannot be challenged regarding the accuracy of the statement. Notably, it is elemental that, [a]n out of court statement which is not offered for its truth, but to explain the witness' course of conduct is not hearsay.

*In re K.A.T.*, 69 A.3d 691, 702 (Pa. Super. 2013) (citations and quotations marks omitted).

Although the trial court did consider the alleged statements of the several children that were repeated by Ms. Moroz and Mother, there was ample evidence showing that Father had entered pleas of *nolo contendere* and was serving a term of incarceration in a number of criminal matters relating to his sexual abuse of his children. Thus, Counsel's alleged ineffectiveness did not deprive Father of a fundamentally fair hearing. Father failed to establish that Counsel's alleged ineffectiveness was the cause of the decrees of termination of his parental rights. *J.T.*, 983 A.2d at 775. Rather, Father's parental rights were terminated not because of Counsel's ineffectiveness, but because of Father's own actions and inactions regarding appropriately parenting the Children. Hence, Father's claim fails.

In addition, Father claims that Counsel failed to object to CYS's presentation of him as a witness as if on cross-examination, especially when Father's PCRA matters were pending in his criminal case. Response to Motion to Withdraw, 10/10/19, at 3. Counsel's advice to Father to plead the Fifth Amendment when questioned by CYS was a strategic legal decision and did not cause the entry of the involuntary termination decrees against Father. *Basemore*, *supra*; *Williams*, *supra*. Thus, Counsel's failure to object to CYS calling Father as if on cross-examination was not ineffective assistance of counsel. *J.T.*, 983 A.2d at 775.

Additionally, Father complains that Counsel failed to call D.K.F. or K.K., his two older daughters, to testify at the termination hearing to establish that

the allegations against Father were fallacious and were originated by Maternal Grandmother. Response to Motion to Withdraw, 10/10/19, at 3-4. Father alleges that Counsel instructed him that the trial court would not allow him to present D.K.F. and K.K. Father also alleges that, early in the proceedings, D.K.F. was present and interviewed in chambers, *ex parte* and off-the-record. Father asserts that the trial court stated that D.K.F.'s testimony would be a problem; that the judge would not allow D.K.F. to testify; and that the termination hearing was continued to a later date. Father complains that Counsel never challenged the trial court's determination regarding D.K.F.'s testimony. Again, these ineffectiveness allegations were not the cause of the decrees of terminating Father's parental rights. *In re J.T.*, 983 A.2d at 775. Counsel was aware of the overwhelming evidence against Father. Therefore, he made a tactical decision not to present D.K.F. and K.K. as witnesses in light of the fact that Father had entered *nolo contendere* pleas in criminal court. *Basemore*, *supra*; *Williams*, *supra*.

Moreover, Father asserts that Counsel was ineffective for failing to cross-examine Maternal Grandmother. Response to Motion to Withdraw, 10/10/19, at 4. Maternal Grandmother was very consistent in her testimony regarding her basis for reporting the sexual abuse that initiated these proceedings. N.T., 9/21/18, at 5-11. Again, Counsel made a strategic decision not to cross-examine Maternal Grandmother. *Basemore*, *supra*; *Williams*, *supra*. Hence, Father's allegation fails.

Father also asserts that the trial court's alleged delay in disposing of his petition filed under the Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546, in his criminal case changed the outcome in this matter. Response to Motion to Withdraw, 10/10/19, at 4. Father also contends that the trial court was biased against him because the same judge also presided over the criminal cases involving Father. *Id.* Father acknowledges that Counsel requested the trial court judge to recuse himself, but Father complains that the recusal request was made off-the-record, and that the trial court's explanation was very brief.

Regarding bias of the trial court judge, we have stated that the standards for recusal are well established. It is the burden of the party requesting recusal to produce evidence establishing bias, prejudice, or unfairness which raises a substantial doubt as to the jurist's ability to preside impartially. This Court has explained:

> In considering a recusal request, the jurist must first make a conscientious determination of his or her ability to access the case in an impartial manner, free of personal bias or interest in the outcome. The jurist must then consider whether his or her continued involvement in the case creates an appearance of impropriety and/or would tend to undermine public confidence in the judiciary. This is a personal and unreviewable decision that only the jurist can make. Where a jurist rules that he or she can hear and dispose of a case fairly and without prejudice, that decision will not be overruled on appeal but for an abuse of discretion. In reviewing a denial of a disqualification motion, we recognize that our judges are honorable, fair and competent.

*Arnold v. Arnold*, 847 A.2d 674, 680-681 (Pa. Super. 2004) (citations, ellipses, and quotation marks omitted).

Father admits that he does not have any particular instance of trial judge bias to support the claim. Response to Motion to Withdraw, 10/10/19, at 4-5. Father nevertheless contends that the judge should have recused himself and should be removed from this case because of the judge's appearance of bias when considered by any person who has knowledge of the complete case. *Id*. at 4 (citing *Liteky v. United States*, 510 U.S. 540, 548 (1994)).[10] According to Father, the trial judge's bias and prejudice against Father was so great that it prevented him from impartially presiding over the case, mandating his recusal and removal from presiding over any further proceedings in this matter.

We find no merit to Father's assertion that the trial judge acted with bias against Father. Adverse rulings alone do not establish the requisite bias warranting the recusal of a trial court judge for bias, especially where the rulings are legally proper. *In re S.H.*, 879 A.2d 802, 808 (Pa. Super. 2005); *see also Arnold*, 847 A.2d at 681 (stating that "[a]dverse rulings alone do not establish the requisite bias warranting recusal, especially where the rulings are legally proper"). Here, the trial court's rulings were legally proper. Moreover, we find that the trial court judge properly exercised his discretion

---

[10] Father cites the concurring opinion by Justice Scalia. *Liteky*, 510 U.S. at 564.

in presiding over both Father's criminal proceedings, in which he entered his pleas of *nolo contendere*, and Father's termination proceedings. In conclusion, we discern no merit to any of Father's *pro se* allegations of ineffective assistance of counsel.

Finally, we have independently examined the record in order to determine whether the appeal is wholly frivolous. ***In re S.M.B.***, 856 A.2d at 1237. Having concluded that there are no meritorious issues, we grant Counsel permission to withdraw, and we affirm the decrees terminating Father's parental rights to the Children pursuant to Sections 2511(a)(1), (2) and (b) of the Adoption Act.

Motion to withdraw as counsel granted. Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>5/21/2020</u>