**In the Interest of: K.D., S.S., L.S., Minors.**

**Appeal of T.S.**

Superior Court of Pennsylvania.

Submitted Nov. 29, 2004.

Filed March 18, 2005.

---

Linda F. Gerencser, Lititz, for appellant.

Cynthia L. Garman, Lancaster, Guardian Ad Litem.

David E. Alspach, Lancaster, for Children and Youth Services.

* Retired Justice assigned to the Superior Court.

BEFORE: KLEIN, McCAFFERY and MONTEMURO *, JJ.

OPINION BY KLEIN, J.:

¶ 1 T.S. (Mother) appeals from the order entered in this dependency matter in the Court of Common Pleas of Lancaster County, which changed the goal regarding her children, from reunification to adoption. After a thorough review of the official record, submissions by the parties and relevant law, we affirm.[1]

¶ 2 Mother has three young children, all girls. K.D. is the oldest, born on 4/3/99. She has been in placement for 33 months. S.S. was born on 8/2/00 and has also been in placement for 33 months. L.S. was born on 8/1/01, while mother was incarcerated in Lancaster County Prison, and has been in placement her entire life. Neither of the two fathers of the children is involved in this matter.

¶ 3 On appeal, Mother raises five claims which can be broken down into three categories: violation of due process, ineffective assistance of counsel, and insufficiency of evidence.

¶ 4 As noted, at the time of the hearings, the children had been in placement for as long as 33 months. Mother was given seven family service plan objectives in order to maintain control of her children. These goals were: 1) resolve her current criminal involvement and refrain from further criminal activity; 2) lead a life free of illegal drugs and misuse of alcohol; 3) maintain employment with adequate income to support herself and her children; 4) maintain stable and adequate housing; 5) demonstrate knowledge and under-

---

1. The standard of review for an order changing the placement goal of a dependent child is abuse of discretion. *In the Interest of: J.H.,* 788 A.2d 1006 (Pa.Super.2001). In deciding a change of placement goal request, the trial court must consider the best interest of the child and whether the parent has substantially complied with the family service plan goals. *In re R.T.,* 778 A.2d 670 (Pa.Super.2001).

standing of children's developmental needs and learn effective parenting skills; 6) demonstrate knowledge and understanding of appropriate, safe and non-violent interpersonal relationships; and 7) have clean and safe housing with appropriate supervision and nurturing care to meet physical and emotional needs.

¶ 5 The Lancaster County Children and Youth Social Service Agency petitioned the court to change the goal from reunification to adoption. Hearings on the matter were held on March 4, 2003; May 20, 2003; September 16, 2003; December 19, 2003; and January 13, 2004. At these hearings, testimony was given by: Cheryl Walters, psychologist; Sarah Mitchell, Lancaster County Children and Youth (LCCY) senior caseworker; Jodi Gantz, LCCY personalized parent trainer; Jennifer Smith, LCCY caseworker; T.S.; and D.S. (T.S.'s mother).[2] Mother was represented by counsel at all hearings and counsel was an active participant in examining and cross-examining witnesses. At the close of testimony, the trial court directed all parties to file memoranda by February 17, 2004. Counsel for Mother, who apparently had not been paid, did not file a memorandum. Instead, he filed a motion to withdraw as counsel. Although she had been eligible for appointed counsel earlier (and presumably was still eligible—Mother's appellate counsel is court appointed) she did not seek new counsel. On April 11, the complained of order was entered.[3]

■ ¶ 6 Mother first complains that due process was violated when the trial court ordered goal change where she was unrepresented by counsel in violation of the Fourteenth Amendment and 42 Pa.C.S. § 6337. Mother was actively represented by counsel throughout the goal change hearing process. Our review of the record indicates counsel did yeoman's work in presenting and challenging evidence. He did, however, fail to file a brief in support of Mother as ordered by the court. Counsel was not relieved of his duty to Mother until after the order was entered. Thus, Mother was still, technically, represented by counsel throughout the briefing period. We do not believe this represents a violation of due process or section 6337, but rather represents an instance of potential ineffective assistance of counsel. As such, we will address the merits of the claim when we address the ineffective assistance claims.

■ ¶ 7 Next, Mother alleges a due process violation in that she was never specifically informed she should have no contact with E.J., biological father of some of Mother's children. Because she was not specifically informed of any 'no-contact rule' regarding E.J., the trial court improperly relied on testimony pertaining to him in changing the goal. Mother correctly points out, "Due process requires that all be informed as to what the state commands or forbids." *Smith v. Goguen,* 415 U.S. 566, 574, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974). Here, Mother was informed in her placement plan that upon her release from prison she will not reside or associate with any person who engages in criminal activity or is involved with illegal drugs. The record demonstrates E.J. clearly fits both categories. That E.J. was not specifically named does not matter; the state is not responsible to name any and every person who could fit into the description of prohibited contacts. Further, the trial court notes that Mother's contact with E.J.

---

**2.** Testimony of many of the witnesses was taken multiple times over the course of the hearings.

**3.** The order was dated April 7, but not officially entered until April 11, thus accounting for differing dates.

was not a determining factor in and of itself. Rather, the court's concern was with her lack of candor regarding contact with E.J.

¶ 8 The trial court notes in its opinion that Mother understood that contact with E.J. was disfavored and as a result felt compelled to lie to her caseworker and the court regarding that contact.[4] (Trial Court Opinion, 8/11/04, p. 6.) The trial court found that Mother told her probation officer that she would be living with E.J., but modified her testimony to the court that they only "might" live together in the future. The trial court found Mother's testimony to be patently incredible and unworthy of belief. *Id.* While her ongoing relationship with E.J. is problematic, her failure to appreciate how her choices speak to her ability to parent show a significant lack of understanding of her responsibilities to her children. Even if we accept the notion that Mother was unaware of being formally restricted in associating with E.J., and we do not, her behavior indicates that she nonetheless knew a relationship with E.J. was not in her or her children's best interest. In spite of that knowledge, she continued her association with him and lied about it. She is entitled to no relief on this point.

¶ 9 The burden of proof and standard of review for an ineffectiveness claim in a case such as this is not clear. It is clear that not every instance of ineffectiveness of counsel will justify a new trial. There are two parts to the test as it pertains to prejudice: first, what are the chances that, absent the ineffectiveness, the result would have been different; and second, what is the level of proof required to show this. The matter is further complicated because the current case law does not specifically distinguish between a finding of dependency, a goal change from reunification to adoption, and a termination of parental rights.

¶ 10 The language of this Court in dealing with dependency issues is different from that used in dealing with termination, but that does not necessarily mean the burdens and standards are different. We have found no case specifically dealing with a claim of ineffectiveness where the underlying issue was change of goal. We note that the cases concerning dependency use different language than those dealing with termination. None of those cases utilize the more familiar language used in the context of ineffectiveness in criminal cases.

¶ 11 As will be discussed below, *whatever* standard is used, the trial court was justified in changing the goal in the instant case. While we recognize that this discussion is *dicta*, we nonetheless include it to highlight the issue for future cases.

 ¶ 12 Sifting through the cases, we suggest that the following is appropriate:

1. The appellant has the normal "preponderance of the evidence" standard to show there was ineffectiveness of counsel. That is, there was an error made and there was no strategic reason for counsel's action or inaction.

2. Once ineffectiveness is established, appellant must show by clear and convincing evidence that it is more likely than not that the result complained of would have been different absent the ineffectiveness.

3. Whether the underlying issue is dependency, change of goal, or termination of parental rights, it must be remembered in considering whether it is likely the result would have been different, all that is necessary is to

---

4. E.J. has a significant history of drug abuse and did not complete his treatment program.

defeat a "clear and convincing" standard.[5]

¶ 13 We arrive at this conclusion by reviewing the language of prior case law that has addressed the issue.

¶ 14 In a dependency case, *In re S.M.*, 418 Pa.Super. 359, 614 A.2d 312 (1992), a panel of this Court stated:

Under the criminal standard, in order to prevail on an ineffectiveness of counsel challenge, the appellant must show that she had a claim of arguable merit, that counsel handled the claim unprofessionally, and that counsel's action caused her prejudice. In the context of a dependency proceeding, before counsel can be deemed ineffective, under the above stated criminal standard the appellant must make a strong showing of ineffectiveness of counsel. Under this heightened test the parent must come forward with evidence that indicates to a high degree of likelihood that but for an unprofessional error on the part of counsel, the child would not have been found dependent.

614 A.2d at 315–16.[6]

¶ 15 In a termination case, *In re Adoption of T.M.F.*, 392 Pa.Super. 598, 573 A.2d 1035, (1990) (*en banc*) (plurality), the plurality of the *en banc* stated the following:

In the context of a termination proceeding, the best approach to suggest itself is the fundamental fairness doctrine whereby, in the exercise of its broad scope of review, an allegation of ineffectiveness of counsel on appeal would result in a review by this Court of the total record with a determination to be made whether on the whole, the parties received a fair hearing, the proof supports the decree by the standard of clear and convincing evidence, and upon review of counsel's alleged ineffectiveness, any failure of his stewardship was the cause of a decree of termination. Mere assertion of ineffectiveness of counsel is not the basis of a remand or rehearing, and despite a finding of ineffectiveness on one or more aspects of the case, if the result would unlikely have been different despite a more perfect stewardship, the decree must stand.

573 A.2d at 1044.

¶ 16 Although we are not bound by this standard due to the plurality aspect of the holding, we can look to the language and reasoning of the case for guidance.

¶ 17 Unfortunately, neither case uses standard language in dealing with the burden of proof when it comes to defining the showing the appellant must make to prove that the ineffectiveness was material to the

---

**5.** This represents an idea of inverse proportion. The higher the underlying standard, theoretically, the lower the quantum of proof needed to challenge the finding. For example, using percentages (solely for illustrative purposes—we do not mean to suggest that hard and fast percentages are a standard used or even contemplated in judicial review) we might say that a fair preponderance of the evidence is anything over 50% supporting a proposition. Clear and convincing might then represent a quantum of 75%. In a hypothetical situation, we will assume that the proposition was proven by a 77% quantum of believable evidence. If ineffectiveness of counsel took away 15% of the evidence and the underlying standard were clear and convincing, then prejudice would be demonstrated. If the underlying standard was only a fair preponderance, then the underlying decision would still stand. Thus, it may be easier to defeat the underlying higher standard of proof.

**6.** We are not sure under what authority our Court announced a new and heightened standard of review. Such determinations are usually left to either the Supreme Court or the legislature. However, since the heightened standard was announced and it has never been challenged, we are bound to follow the decision.

finding. In the dependency case, *In Re S.M., supra,* after stating the appellant must make a "strong showing" of ineffectiveness, the Court went on to say, "Under this heightened standard the parent must come forward with evidence that indicates to a high degree of likelihood that but for an unprofessional error on the part of counsel, the child would not have been found to be dependent." Neither "strong showing" nor "high degree of likelihood" are traditional ways to phrase this, to say nothing of the problems of the double negative. It seems that our Court was saying that the test is more than a simple "preponderance of the evidence" to show it is "more likely than not" that the ineffectiveness caused the finding of dependency.

¶ 18 In traditional terms, there seems to be three possible interpretations of this language.

1. The appellant must show by clear and convincing evidence that it is more likely than not that the result would have been different, absent the ineffectiveness.

2. The appellant must show by the preponderance of the evidence there is a "high degree of likelihood" the result would have been different, absent the ineffectiveness.

3. The appellant must show by clear and convincing evidence that there is a "high degree of likelihood" the result would have been different, absent the ineffectiveness.

¶ 19 Because it does not seem fair to put a "double" higher burden on an appellant, and we are more used to the language in version 1 than version 2, we would suggest that the best way to establish a standard that is relatively easy to understand and apply is to require the appellant to show

by clear and convincing evidence that it is more likely than not that the result would have been different absent the ineffectiveness.

¶ 20 The plurality opinion in the termination case, *In re Adoption of T.M.F., supra,* can also be interpreted in the same way. In that case, the key language to justify a new trial is that "...the proof supports the decree by the standard of clear and convincing evidence, and upon review of counsel's alleged ineffectiveness, any failure of stewardship was the cause of a decree of termination." *Id.* at 1044. The Court goes on to say, "...if the result would have been different despite a more perfect stewardship, the decree must stand." *Id.*

¶ 21 This can be read to mean the same as version 1 listed above. First, in *T.M.F.* the Court *does* articulate that the standard is "clear and convincing evidence." That is the traditional way of saying the standard is between a "fair preponderance of the evidence" and "beyond a reasonable doubt." [7] Where the Court says "if the result would unlikely have been," that language may be turned around to the positive to say that the appellant must show that it "is likely" or "is more likely than not" that the result would have been different, absent the ineffectiveness.

¶ 22 This, then, fits with the standard that the appellant must show by clear and convincing evidence that it is more likely than not that the result would have been different, absent the ineffectiveness—version 1 above. Since we conclude that the standard is the same for dependency and termination cases, there is no reason to alter the standard for goal change cases.

---

7. Where exactly this fits and whether it actually makes any sense to a jury is unclear. As noted in an earlier footnote, there are no hard and fast rules as to what constitutes "clear and convincing" or "beyond a reasonable doubt."

¶ 23 Keeping the above discussion in mind, we examine Mother's next claim that the trial court erred in admitting testimony regarding a positive drug test and that trial counsel was ineffective for failing to object to the admission of that evidence. Here, Mother cannot show the result would have been any different. While the Freedom Center (the agency that conducted the drug test) admitted that there had been a problem with its marijuana screening in the relevant time period, there was no indication that there had been any problems with cocaine screening.[8] Additionally, Mother submitted the results of a second test, performed approximately one week later, that revealed no drug use.

¶ 24 As to the hearsay aspect of this claim, Mother is similarly entitled to no relief. There is no indication of record that there was any problem with chain of custody, nature of reagents used in the drug testing, or any other of the technical aspects of this hearsay claim. There is no indication that all technical aspects of presenting the drug test could not have been met had an objection been made at the hearing. This was not a criminal trial where the Commonwealth has but one chance to put all its evidence before the jury, and if all the technical requirements for the presentation of evidence are not met, then the evidence is excluded. This matter represents a continuing series of hearings regarding the fitness and ability of Mother to parent these three children. If proper documentation for the drug test was not immediately available[9] then the issue would simply have been postponed to a later hearing, as has happened often during this case. Thus, failing some sort of indication that there was an actual problem with the technical aspects of this evidence, Mother cannot demonstrate prejudice.

¶ 25 The ineffective assistance claim regarding Counsel's failure to file a brief also fails. The trial court held multiple hearings from March 2003 to January 2004. The trial court heard testimony, as noted above, from a wide variety of people including psychologists, social case workers, appellant herself, and appellant's mother. The testimony credited by the trial court clearly indicated that Mother was not a fit parent to the children, had been unable to meet her goals despite 33 months of effort and the best interests of the children would be served by changing the goal for the children from reunification with Mother to adoption.[10] In light of this, the trial court has indicated that the briefs were basically a formality (there is no requirement that the trial court request briefs after a goal change hearing). The trial court further stated, in no uncertain terms, that after actually hearing the evidence presented and determining the lack of credibility of Mother, that no brief could have changed the result. Therefore, Mother is not entitled to relief on this point.

8. The Freedom Center may be well known in the Lancaster area, but we are unaware of the exact nature of this organization. While the drug testing appears to have been conducted under the auspices of The Freedom Center, we do not know where the actual testing occurred or the manner of analysis. Thus we cannot determine the applicability of 28 Pa. Code § 5.50 and the list of approved clinical laboratories found in the *Pennsylvania Bulletin*.

9. The record is silent as to this, because no objection was made. We have no idea what documentation was available at the time of the hearing.

10. We will discuss the particulars of the evidence when we discuss the insufficiency of evidence claim.

¶ 26 Finally, Mother claims there was insufficient evidence to support the goal change determination. We disagree. The evidence credited by the trial court clearly supports the goal change from reunification to adoption. In 33 months, Mother could not meet her personal goal of taking care of herself. In spite of a specific goal of maintaining employment with an adequate income to support herself and her children, she was fired from a job at the Waffle House for getting into a confrontation with another employee. She claimed to have obtained other employment with a marketing firm, but never provided proof of that job. She later claimed to have quit. She is content to live off Social Security. She has been unable to provide proof of paying rent or utilities since moving to Reading.

¶ 27 There is evidence that she has continued in her relationship with E.J. in spite of her knowledge that the relationship was disfavored due to his criminal and drug abuse background. She apparently informed one of her probation officers that she and E.J. were living together, while denying it to others.

¶ 28 Another goal for Mother was to show commitment to her children. Yet evidence indicated that other than the scheduled contact with her children, she did not contact K.S.'s therapist to discuss her progress. Mother did not call to inquire about the general well-being of her children, or to find out about regularly scheduled medical or dental appointments. S.S. suffers from severe asthma, yet Mother has never learned how to operate the nebulizer which S.S. needs to use on a daily basis. Mother has been informed of the dangers to S.S. of second-hand smoke and claims to have quit, but she had been seen smoking outside the courthouse.

¶ 29 The personalized parent trainer testified that Mother would not acknowledge problematic behavior and would deny or rationalize in an effort to justify herself. The trainer also testified that Mother could not understand the importance of teaching the children to obey rules.

¶ 30 The psychologist testified that K.D. suffered from an adjustment disorder that has now evolved into a Disorder of Childhood N.O.S.[11] with Attachment Disorder Difficulties. These problems would only be exacerbated by the uncertainty of continued foster care coupled with continued meetings with Mother.

¶ 31 The problems mentioned above represent only a partial list of the problems noted in documentary and testimonial evidence. Ignoring the previously disputed evidence of Mother's continued drug involvement, it is still abundantly evident that Mother has not substantially complied with the family service plan goals and that it is in the best interests of these children to be placed in a stable home. *In re R.T.*, *supra*. The goal change from reunification to adoption, under any relevant analysis, is clearly and convincingly supported by evidence of record.

¶ 32 Order affirmed.

¶ 33 MONTEMURO, J., concurs in the result.

---

11. Not Otherwise Specified