J-S35015-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE:  ADOPTION OF C.L.V., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF:  S.H., MOTHER | No. 254 WDA 2017 |

Appeal from the Order November 23, 2016
In the Court of Common Pleas of McKean County
Orphans' Court at No(s): 42-16-0112

BEFORE:  LAZARUS, J., RANSOM, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LAZARUS, J.:                    **FILED JUNE 28, 2017**

S.H. ("Mother") appeals from the order, entered in the Court of Common Pleas of McKean County, terminating her parental rights to C.L.V., (DOB: August, 2013).[1]   After our review, we affirm.

At birth, C.L.V. tested positive for opiates.  Bucks County Children and Youth Services ("Bucks CYS") placed C.L.V. with paternal aunt and her husband ("Petitioners"), who reside in Kane, McKean County.  Mother had supervised visits for approximately two months.

McKean County Children and Youth Services ("McKean CYS") filed a dependency petition on November 15, 2013.  The court adjudicated C.L.V. dependent on November 27, 2013, when she was three months old.

_____

[*] Former Justice specially assigned to the Superior Court.

[1] The court also terminated Father's parental rights.  His separate appeal is docketed at 54 WDA 2017.

Thereafter, Mother left the Kane area, and McKean CYS lost touch with her. Mother and Father were never married; both have substance abuse and criminal histories. C.L.V. has lived with, and has been exclusively parented by, Petitioners, since she was four days old.

On May 20, 2016, Petitioners filed a petition to terminate Mother's parental rights. *See* 23 Pa.C.S.A. § 2512(a)(3).[2] The court held a hearing on August, 17, 2016. Mother, who was incarcerated in state prison at the time, was not present, but she participated by telephone. Mother's counsel was present in court.

---

[2] **§ 2512. Petition for involuntary termination**

   **(a) Who may file.**--A petition to terminate parental rights with respect to a child under the age of 18 years may be filed by any of the following:

      (1) Either parent when termination is sought with respect to the other parent.

      (2) An agency.

      *(3) The individual having custody or standing in loco parentis to the child and who has filed a report of intention to adopt required by section 2531 (relating to report of intention to adopt).*

      (4) An attorney representing a child or a guardian ad litem representing a child who has been adjudicated dependent under 42 Pa.C.S. § 6341(c) (relating to adjudication).

   23 Pa.C.S.A. § 2512(a)(3) (emphasis added).

Mother testified that she had supervised visits with C.L.V. for approximately two weeks, from mid-September 2013 to October 2013, that she was struggling with addiction during that time, that she was incarcerated in November 2013 for four days, and then moved to Bucks County to live with her sister. Following a parole violation, Mother was sentenced in Bucks County to 11½ to 22 months, served approximately 12 months, and stated that during 2014, the only period of time she was not incarcerated was from January 1 to January 5. N.T. Hearing, 8/17/16, at 59-62.

Mother also testified that after she was released from incarceration, in January 2015, she moved in with her sister in Bucks County. She moved back to McKean County on May 26, 2015. *Id.* at 65. She also testified that when she moved back to McKean County, her visitation requests were not granted because Petitioner (Paternal Aunt), did not "feel comfortable with it[,]" and that Petitioners "were scared and just nervous about the whole situation." *Id.* at 67-68. Mother explained that the "situation" was that she "got into legal trouble" and was "incarcerated July 27 of 2015." *Id.* at 68. Mother stated that she is addicted to opiates and alcohol and that she has struggled with addiction for the last eight years. *Id.* at 69-70, 79. She also stated that during her current incarceration, she participated in a six-month drug and alcohol program, from which she graduated in June 2016, and that she expected to be released in September 2016, and from there move on to another treatment program in Philadelphia. *Id.* at 70.

- 3 -

Finally, Mother conceded that she has not taken steps to maintain a relationship or bond with C.L.V., *id.* at 71, 80, that she knew Petitioners had custody of C.L.V. and did not attempt to modify that order or seek custody of C.L.V., and that C.L.V. did not know her voice. *Id.* at 73, 75, 77. Mother also acknowledged that for most of C.L.V.'s life, Mother has had addiction issues, and she testified that she was not sure where she would live upon her release and completion of treatment programs because she has three children in Bucks County.[3] *Id.* at 75.

Following the hearing, the court granted the petition. The court found that that McKean CYS had established by clear and convincing evidence that termination was proper under 23 Pa.C.S.A. § 2511(a)(1) ("The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused to failed to perform parental duties."). The court also found that termination best served C.L.V.'s needs and welfare. *See* 23 Pa.C.S.A. § 2511(b).

The order was docketed on November 23, 2016; a notation on the docket indicates that notice of the order was sent to the parties on November 29, 2016. Mother did not file a timely appeal. On January 30, 2017, Mother filed a motion for leave to file appeal *nunc pro tunc*, along with

---

[3] Mother shares custody of her 8- year-old son with the boy's father. Her other two children have been adopted. N.T. Hearing, 8/17/16, at 75.

her notice of appeal. The court granted Mother's motion on February 7, 2017.

Mother raises two issues for our review:

1. Whether the trial court abused its discretion in granting petitioner's petition to terminate Mother's parental rights when Mother demonstrated she was making all available efforts to maintain a place of importance in [C.L.V.'s] life while incarcerated?

2. Whether trial counsel was ineffective for failing to file a brief on Mother's behalf?

Appellant's Brief, at 4.

When reviewing an order granting a petition for involuntary termination of parental rights, we apply an abuse of discretion standard. *Adoption of S.P.*, 47 A.3d 817, 826 (Pa. 2012).

[O]ur standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.

*Id.* (citations omitted). Further, when reviewing a petition for involuntary termination of parental rights, the trial court's initial focus is on the parents. *In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007).

The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in [s]ection

2511(a).  Only if the court determines that the parent's conduct warrants termination of his or parental rights does the court engage in the second party of the analysis pursuant to [s]ection 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.  One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*Id.*

When separated from her child, it is incumbent upon the parent to maintain communication and association with her child. "This requires an affirmative demonstration of parental devotion, imposing upon the parent the duty to exert [her]self, to take and maintain a place of importance in the child's life." *In re G.P.-R.*, 851 A.2d 967, 977 (Pa. Super. 2004).  In the case of an incarcerated parent, this Court has held:

[T]he fact of incarceration does not, in itself, provide grounds for the termination of parental rights. However, a parent's responsibilities are not tolled during incarceration. The focus is on whether the parent utilized resources available while in prison to maintain a relationship with his . . . child.  An incarcerated parent is expected to utilize all available resources to foster a continuing close relationship with his . . . children.

Where a non-custodial parent is facing termination of his . . . parental rights, the court must consider the noncustodial parent's explanation, if any, for the apparent neglect, including situations in which a custodial parent has deliberately created obstacles and has by devious means erected barriers intended to impede free communication and regular association between the noncustodial parent and his . . . child. Although a parent is not required to perform the impossible, he must act affirmatively to maintain his relationship with his child, even in difficult circumstances. A parent has the duty to exert himself, to take and maintain a place of importance in the child's life.

- 6 -

Thus, a parent's basic constitutional right to the custody and rearing of his . . . child is converted, upon the failure to fulfill his . . . parental duties, to the child's right to have proper parenting and fulfillment of his . . . potential in a permanent, healthy, safe environment. A parent cannot protect his parental rights by merely stating that he does not wish to have his rights terminated.

*In re B.*, *N.M*., 856 A.2d 847, 855-56 (Pa. Super. 2004) (internal citations and quotation marks omitted).

Here, the trial court found that Mother had no significant contact with C.L.V. In fact, Mother had not seen C.L.V. since July 2015, ten months before the petition was filed. On that occasion, Mother had a "momentary and serendipitous" encounter with C.L.V. at a grocery store. *See* Trial Court Findings of Fact, 11/23/16, at 2; N.T. Termination Hearing, 8/17/16, at 31-32. Prior to that, Mother's last physical contact with C.L.V. was in October 2013. N.T. Termination Hearing, 8/17/16, at 32. The court found that Mother did not send C.L.V. cards, gifts or letters, and that she exhibited very little effort in attempting to establish a relationship with C.L.V. *See* Trial Court Findings of Fact, 11/23/16, at 2; N.T. Termination Hearing, 8/17/16, at 28-29, 42-44. The court also determined Petitioners, who intend to adopt C.L.V., have been the exclusive caregivers and sources of support for C.L.V., and that Petitioners have consistently provided for C.L.V.'s developmental, physical and emotional wellbeing. Trial Court Opinion, 11/23/16, at 4; N.T. Termination Hearing, 8/17/16, at 32-33, 47-48.

Our comprehensive review of the record supports the court's findings. McKean CYS established by clear and convincing evidence that, for at least

six months prior to the filing of the petition, Mother failed to perform parental duties. Acknowledging the difficult circumstances, it remains quite clear that Mother has made no meaningful, genuine or consistent efforts to establish a relationship with C.L.V. *See In re T.D.,* 949 A.2d 910 (Pa. Super. 2008). Accordingly, termination was proper under section 2511(a)(1).

With respect to section 2511(b), the evidence established that C.L.V. is doing well in Petitioners' care, that Petitioners are meeting C.L.V.'s needs, and that they intend to adopt her. The evidence also established that there is no bond between Mother and C.L.V.; Mother acknowledged as much, and she admitted that C.L.V. did not even know her voice. There is no bond to be broken. Clearly, termination of parental rights would not adversely affect C.L.V. The court, therefore, properly determined that termination was in C.L.V.'s best interests pursuant to section 2511(b). *See In re K.Z.S.*, 946 A.2d 753, 763 (Pa. Super. 2008) ("In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists.").[4]

Finally, Mother argues her counsel was ineffective for failing to file a supplemental brief on her behalf following the termination hearing. Mother

---

[4] We note that the guardian *ad litem* a filed a brief in support of the order granting termination.

claims that failure to submit this brief prejudiced her. This claim is meritless.

> In the context of a termination proceeding, . . . an allegation of ineffectiveness of counsel on appeal would result in a review by this Court of the total record with a determination to be made whether on the whole, the parties received a fair hearing, the proof supports the decree by the standard of clear and convincing evidence, and upon review of counsel's alleged ineffectiveness, any failure of his stewardship was the cause of a decree of termination. Mere assertion of ineffectiveness of counsel is not the basis of a remand or rehearing, and despite a finding of ineffectiveness on one or more aspects of the case, if the result would unlikely have been different despite a more perfect stewardship, the decree must stand.

*In re Adoption of T.M.F.*, 573 A.2d 1035, 1040 (Pa. Super. 1990). The party alleging ineffective assistance of counsel in a termination of parental rights case must show by clear and convincing evidence that it is more likely than not that the result of the proceeding would have been different, absent the alleged ineffectiveness. *In re K.D.*, 871 A.2d 823, 829 (Pa. Super. 2005).

Prior to the hearing, on July 26, 2016, the court appointed counsel for Mother. Counsel represented Mother at the hearing, and conducted direct examination and cross-examination. Mother received a fair hearing and the record fully supports the court's termination order. Mother's claim that, had counsel filed a supplemental brief the result would have been different, is an indefensible position in light of the record before us. *In re K.D.*, *supra*.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  6/28/2017