J-S07001-20 & J-S07002-20

2020 PA Super 269

| | | |
|---|---|---|
| IN THE INTEREST OF: D.G., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.G., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2267 EDA 2019 |

Appeal from the Order Entered July 16, 2019
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0002404-2016

| | | |
|---|---|---|
| IN THE INTEREST OF: D.P.G., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.G., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2268 EDA 2019 |

Appeal from the Order Entered July 16, 2019
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000206-2018

| | | |
|---|---|---|
| IN THE INTEREST OF: D.G., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.G., CHILD | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2294 EDA 2019 |

Appeal from the Order Entered July 16, 2019

In the Court of Common Pleas of Philadelphia County Family Court at
No(s):  CP-51-DP-00002404-2016

| | | |
|---|---|---|
| IN THE INTEREST OF: D.P.G., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.P.G., CHILD | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2295 EDA 2019 |

Appeal from the Order Entered July 16, 2019
In the Court of Common Pleas of Philadelphia County Family Court at
No(s):  CP-51-AP-0000206-2018

BEFORE:   NICHOLS, J., KING, J., and STRASSBURGER, J.*

OPINION BY NICHOLS, J.:                                          Filed: November 19, 2020

A.G. (Mother) appeals from the respective decree and order[1] granting the petitions filed by the Philadelphia Department of Health and Human Services (DHS) to terminate involuntarily her parental rights to D.G., also known as D.P.G. (Child), born July 2003, and changing the permanency goal from reunification to adoption.  Child's guardian *ad litem* (GAL) also appeals

---

* Retired Senior Judge assigned to the Superior Court.

[1] The trial court also terminated the parental rights of J.B. (Father).  Father did not appeal.  As discussed below in further detail, the trial court previously terminated Mother's parental rights to Child's sibling, D.N.G. (Sibling 1), but this Court vacated that decree in a published opinion in **Interest of D.N.G.**, 230 A.3d 361 (Pa. Super. 2020).

from the same decree and order.[2] For the reasons that follow, we conclude that Child was not afforded the full benefit of legal counsel, and we vacate the decree and order and remand these matters for further proceedings consistent with this opinion.

The trial court summarized the background to these appeals as follows:

DHS originally became involved with this family on November 5, 2014. DHS received a General Protective Services (GPS) report alleging that Mother had not been providing food to Child and Sibling 1;[fn2] Mother had not been ensuring that Child was attending school; Child had been playing in the streets without appropriate supervision; Mother was pregnant; Mother had stated that the family home at the time was not her property; Mother was unemployed. This report was determined to be valid. On December 24, 2014, In-Home Services (HIS) were implemented through the Community Umbrella Agency (CUA) Bethanna to assist Mother with Child's physical, educational, medical, and mental health needs. On January 12, 2015, CUA held a Single Case Plan (SCP) meeting and Child's goal was identified as "stabilize family." Mother's objectives were to provide a safe and appropriate environment for Child; contact the Office of Supportive Housing (OSH) to assist with permanent housing; meet Child's educational needs; ensure that Child attends school on a daily basis; cooperate with CUA services; and be available for all home visits and requested information.

[fn2] Child has two siblings that are not involved in this appeal. This trial court terminated Mother's parental rights to Sibling 1 on January 17, 2019. Mother subsequently appealed Sibling 1's termination and goal change on February 11, 2019. [At the time the trial court prepared its opinion in this matter, the appeal regarding Sibling 1 was pending decision by the Superior Court of Pennsylvania. This Court issued the opinion in **D.N.G.** on March 13, 2020].

---

[2] We consolidate Mother's and the GAL's appeals for the purpose of this decision.

On August 30, 2016, CUA conducted a visit with Mother and the Transitional Case Manager (TCM) from Friends Rehabilitation Program. CUA, TCM, and Mother discussed Mother's lack of compliance with the Transitional Housing Program. TCM and Mother scheduled an appointment at the TCM's office and CUA provided Mother with public transit tokens in order to attend the appointment and transport Child to school. On September 7, 2016, Mother failed to appear for the scheduled meeting with the TCM. The TCM visited the family home and found that Child was not in school for his first day; Child was dirty and wearing minimal clothing, and Mother was lying in bed. Mother told the TCM that Child needed a haircut and was not presentable to go to his first day of school. Mother also stated that she was unable to attend the scheduled meeting because did not have public transit tokens.

On September 20, 2016, CUA arrived at the home for a scheduled visit in the early evening and found Child playing in the vacant lot across the street from the family home. CUA found that the house was dirty, Child was running around the home and yelling, and Mother was unwilling to leave her bed. Mother stated that she was tired and was not adjusted to awakening early in the mornings. Mother was minimally engaging with CUA and continuously fell asleep throughout the discussion. On September 22, 2016, CUA visited the family home again. Mother stated that she did not have a plan if the family were to be evicted from transitional housing and that she did not have any resources to care for Child and siblings.

Child [was] truant [while in Mother's care]. During the 2014-2015 school year, Child had 21 unexcused absences and 36 late arrivals to school. During the 2015-2016 school year, Child had 64 unexcused absences and 18 late arrivals to school. During the 2016-2017 school year, Child had 4 unexcused absences and 4 late arrivals to school.

On November 10, 2016, an adjudicatory hearing was held for Child, Sibling 1, and Sibling 2. Child was adjudicated dependent based on truancy and present inability to provide appropriate care and supervision. Mother was ordered to comply with mental health treatment recommendations. Mother was also ordered to ensure Child attends school on a daily basis with no unexcused absences or latenesses as well as to sign all necessary releases. Mother and Child were referred to the Behavioral Health System (BHS) for monitoring. The trial court ordered that DHS supervision be implemented for family.

On November 30, 2016, a permanency review hearing was held for Child. Mother was present for this hearing. The trial court determined that Mother was non-compliant with her court-ordered objectives. The trial court ordered that DHS supervision stand, that DHS was to obtain an Order of Protective Custody (OPC) for Child, that the police department assist, and that DHS and/or CUA plan for the placement of Child. On that same day, DHS obtained an OPC for Child and siblings in order to ensure their safety. Child was placed in foster care through Bethanna. At the shelter care hearing on December 2, 2016, the trial court lifted the OPC, discharged the temporary commitment to DHS, and fully committed Child to the custody of DHS. Mother was referred to BHS for consultation and/or evaluation; referred to the Clinical Evaluation Unit (CEU) for a forthwith drug and alcohol screen, dual diagnosis assessment, and three random screens; and ordered to not have any contact with Child outside of supervised visitation. The trial court further ordered that if Mother failed to comply, she would be held in contempt.

\*     \*     \*

. . . DHS filed petitions to involuntarily terminate Mother's parental rights and change Child's permanency goal to adoption on March 16, 2018.

\*     \*     \*

On January 17, 2019, a permanency review hearing was held for Child. Mother was present for this hearing. The trial court learned that Mother was engaged at JFK for services. The trial court ordered the commitment of Child to stand. The trial court held the termination and goal change petitions in abeyance as to Mother because Michael Graves, Esq., as Child's special legal counsel (Legal Counsel), needed to visit with Child. Legal Counsel was ordered to visit Child prior to the next permanency review hearing. On the same date, the trial court held a termination and goal change trial for Sibling 1. The trial court later incorporated the testimony given at that hearing into Child's termination and goal change trial.

On July 16, 2019, the trial court . . . held the termination and goal change trial for Child.

Trial Ct. Op., 1-3, 5-6 (some footnotes omitted and formatting altered).

On July 16, 2019, the trial court entered the decree terminating Mother's parental rights and the order changing the permanency goal from reunification to adoption. On August 12, 2019, Mother and the GAL each filed separate notices of appeal and statements of errors complained of on appeal in the adoption and dependency cases. The trial court filed a responsive opinion addressing the adoption and dependency appeals.

Mother presents the five questions, which we have reordered as follows:

1. Did the trial court violate [fifteen] year old [Child's] statutory right to legal counsel during the contested involuntary termination/goal change hearing?

2. Did [Child] receive effective legal representation in the involuntary termination/goal change hearing pursuant to [the Pennsylvania] Rules of Professional Conduct?

3. Did the trial court abuse its discretion, when it involuntarily terminated [M]other's parental rights pursuant to 23 Pa.C.S.[ §] 2511 (a)(1), (2), (5), and § 2511 (a) (8)?

4. Did the trial court abuse its discretion, when it determined that terminating [M]other's parental rights would best serve the needs and welfare of [Child] pursuant to 23 Pa.C.S.[] § 2511(b)?

5. Did the trial court abuse its discretion when it changed [Child's] goal to adoption?

Mother's Am. Brief, 2267 EDA 2019 & 2268 EDA 2019, at vii.[3]

_____

[3] The Pennsylvania Supreme Court suspended Mother's counsel at trial (trial counsel) from the practice of law effective at the time he filed the initial appellant's briefs in these appeals. This Court struck the briefs filed by Mother's trial counsel and remanded for the appointment of new counsel. Mother's issues were preserved in trial counsel's Rule 1925(b) statements.

The GAL presents two issues for review, which we have reordered as follows:

1. The trial court committed an error of law and/or abuse of discretion by involuntarily terminating Mother's parental rights and changing [Child's] permanency goal from reunification to adoption, when [Child] has recently moved to his current placement, indicating that any adoption by the current caregiver was uncertain.

2. Did the trial court commit[] an error of law and/or abuse of discretion when it denied [GAL's] request for a continuance or to hold the decision in abeyance so that the GAL could have the opportunity to speak when [Child] had moved to a new foster home[?]

GAL's Brief, 2294 EDA 2019 & 2295 EDA 2019, at 7.

**Child's Right to Counsel**

Mother's first two issues and the GAL's first issue focus on Child's right to counsel. Mother claims that "the trial court violated [Child's] statutory legal right to counsel." Mother's Am. Brief at 11. Mother references 23 Pa.C.S. § 2313(a) and our Supreme Court's decision in *In re Adoption of L.B.M.*, 161 A.3d 172 (Pa. 2017). She asserts that the trial court failed to assess whether there was a conflict between Child's best and legal interests. *Id.* at 10. Mother emphasizes that the trial court excused Legal Counsel from the July 16, 2019 hearing after an exchange in the middle of that hearing. *See id.*

Mother further asserts that "the trial court inadvertently minimized the importance of [Child's] right to legal counsel given the trial court's belief that it [was] the court's role to ultimately decide what [was] in [Child's] best interest." *Id.* at 11. Mother continues:

- 7 -

> Unfortunately, this position overlooks the fact that under the Adoption Act, a child over the age of 12 must consent to the adoption. 23 Pa.C.S.[ §] 2711(a). Thus, without giving equal weight to an adolescent's preferences versus the court's perception of what is in his best interest, the court runs the risk of creating an orphan unnecessarily.

*Id.*

Mother also claims that Legal Counsel's representation of Child was deficient. *Id.* at 11-13. Mother notes that while Legal Counsel consulted with Child when Child was in a residential facility, Legal Counsel did not determine whether Child's preferences regarding adoption changed when Child moved to live with Sibling 1 in a foster home. *Id.* at 13. Mother again emphasizes that "after placing what he thought to be [Child's] position on the record," Legal Counsel "left the courtroom." *Id.*

The GAL claims, in part, that Child was "denied the zealous representation by [Legal Counsel]." GAL's Brief at 12. The GAL notes that Legal Counsel did not call witnesses, produce evidence, or request that Child be present or questioned *in camera* by the trial court. *Id.*

DHS counters that the Child's right to legal counsel was satisfied. DHS contends that once appointed, a child's legal counsel's duty is "to place their client's position on the record" and that "[t]hat is precisely what occurred here." DHS's Brief, 2267 EDA 2019 & 2268 EDA 2019, at 46;[4] *see also* DHS's Brief, 2294 EDA 2019 & 2295 EDA 2019, at 22 (arguing that "the record is

---

[4] DHS filed an initial appellee's brief in response to Mother's initial appellant's brief, which, as noted above, this Court struck. DHS did not file a response to Mother's amended brief and elected to rely on its initial appellee's brief.

clear that the trial court properly ensured that both Child's legal and best interests were protected"). DHS notes that because the trial court appointed Legal Counsel to represent Child, "this was not a situation where Child's best and legal interests diverged, and the GAL impermissibly represented both interests." DHS's Brief at 47. DHS continues that Legal Counsel met with Child and expressed Child's preference to be with Mother at the hearing. *Id.* DHS concludes that "[t]he trial court was well aware of the how Child felt." *Id.*

DHS further claims that Mother's mere assertions of ineffective assistance of counsel do not warrant a new hearing. *Id.* at 44-45. DHS relies on *In re K.D.*, 871 A.2d 823 (Pa. Super. 2005), for the proposition that claims of ineffectiveness in a termination proceeding will not be the basis for a remand or a rehearing, unless the result would have been different. *Id.* at 44. According to DHS, Mother simply disagrees with Legal Counsel's strategy and cannot show how any shortcomings in Legal Counsel's representation of Child affected the "ultimate outcome of the case." *Id.* Instead, DHS asserts that "[n]o differing legal strategy would have changed the fact that [DHS] clearly met its burden of proving the statutory grounds for [terminating Mother's parental rights] and that the goal change served Child's best interests." *Id.*

Legal Counsel has not filed a brief in this appeal. However, in a letter filed in Mother's appeal, Legal Counsel stated that he joined DHS's brief.

Initially, this Court will consider the parties' arguments regarding Child's right to counsel in the termination proceeding. Our Supreme Court has established that appellate review of an order granting or denying termination of parental rights requires the appellate court to "accept factual findings and credibility determinations supported by the record" and "assess whether the common pleas court abused its discretion or committed an error of law." *In re T.S.*, 192 A.3d 1080, 1087 (Pa. 2018) (citation omitted), *cert. denied sub nom. T.H.-H. v. Allegheny Cty. Office of Children, Youth & Families*, 139 S. Ct. 1187, 203 L. Ed. 2d 220 (2019). This Court's standard and scope of review of questions of law is *de novo* and plenary. *See id.*

Section 2313(a) of the Adoption Act establishes a child's right to legal counsel in a termination proceeding as follows:

> **(a) Child.—**The court shall appoint counsel to represent the child in an involuntary termination proceeding when the proceeding is being contested by one or both of the parents. The court may appoint counsel or a guardian ad litem to represent any child who has not reached the age of 18 years and is subject to any other proceeding under this part whenever it is in the best interests of the child. No attorney or law firm shall represent both the child and the adopting parent or parents.

23 Pa.C.S. § 2313(a).

Our Supreme Court has explained:

> [T]he first sentence of Section 2313(a) requires that the common pleas court appoint an attorney to represent the child's legal interests, i.e., the child's preferred outcome; (b) where there is a conflict between the child's legal interests and his best interests, an attorney-[GAL], who advocates for the child's best interests, cannot simultaneously represent the child's legal interests;[fn2] and (c) in such a circumstance, the failure to appoint a separate

- 10 -

attorney to represent the child's legal interests constitutes structural error, meaning it is not subject to a harmless-error analysis.

[fn2] The difference between legal interests and best interests is summarized in a comment to a rule governing the GAL's duties in dependency matters:

"Legal interests" denotes that an attorney is to express the child's wishes to the court regardless of whether the attorney agrees with the child's recommendation. "Best interests" denotes that a guardian *ad litem* is to express what the guardian *ad litem* believes is best for the child's care, protection, safety, and wholesome physical and mental development regardless of whether the child agrees.

*T.S.*, 192 A.3d at 1082 & n.2 (citation and some footnotes omitted).

In *D.N.G.*, this Court previously considered Mother's appeal with respect to Sibling 1, who Legal Counsel also represented along with Child. *See D.N.G.*, 230 A.3d at 363. The *D.N.G.* Court vacated the decree terminating Mother's parental rights to Sibling 1, holding that Sibling 1 "was deprived of his statutory right to counsel to advance his legal interest . . . ."[5] *Id.* at 367.

Several points in *D.N.G.* bear emphasis. First, the *D.N.G.* Court noted that Mother did not object to Legal Counsel's representation of Sibling 1 in the trial court. *D.N.G.*, 230 A.3d at 366. Nevertheless, because Mother challenged Legal Counsel's representation of Sibling 1 on appeal, this Court concluded that it could "address the merits of Mother's argument [as to Sibling 1] even though she neglected to object" in the trial court. *Id.*

_____

[5] The *D.N.G.* Court affirmed the order granting a goal change to adoption as to Sibling 1 because Mother abandoned any argument in support of the dependency order in that appeal. *See D.N.G.*, 230 A.3d at 363 & n.2.

Second, Mother and DHS raised similar arguments in the instant appeal that they argued in *D.N.G.*  *See id.*  Specifically, in *D.N.G*., DHS argued that Legal Counsel "performed his duty fully by discerning [Sibling 1's] preference and reported it to the court."  *Id.* (citation omitted).  However, the *D.N.G.* Court rejected as "shallow," or "narrow," DHS's attempts to define to a child's legal counsel's duties as only talking to a child and reporting the child's preference to the trial court:

> While legal representation in this context necessarily involves talking to the child client and reporting the child's preferences to the court, it is in no way limited to those two actions.  To the contrary, pursuant to the majority of justices in [*L.B.M.*, Legal Counsel] was required to advocate on behalf of [Sibling 1] and provide zealous client-directed representation of [Sibling 1's] legal interests.

*Id.*

Third, the *D.N.G.* Court found several factors particularly relevant when concluding that Legal Counsel's representation of Sibling 1 was deficient.  For example, the Court noted that beyond advising the trial court of Sibling 1's preference, Legal Counsel failed to participate meaningfully in the hearing "relative to" Sibling 1's legal position.  *Id.* at 365.  Moreover, this Court highlighted Legal Counsel's failure to join or support Mother and Father's requests for permanent legal custody as an alternative to adoption,[6] and Legal

---

[6] This Court has explained that "[i]f the [trial] court decides that neither reunification nor adoption is best suited to the child's safety, protection and physical, mental and moral welfare, it may order the child to be placed with a legal custodian." *In re B.S.*, 861 A.2d 974, 976 (Pa. Super. 2004) (citing 42 Pa.C.S. § 6351(f.1)(3)).

Counsel's decision to forgo opportunities to argue in support of Sibling 1's legal interest even when Mother and the GAL opposed the termination of Mother's parental rights. *Id.* at 366. The *D.N.G.* Court further reasoned:

> Most importantly, [Legal Counsel] failed to cast the most meaningful legal argument in his arsenal, *i.e.*, the probability that his soon-to-be-twelve-year-old client would refuse to consent to any contemplated adoption.[fn3] Indeed, by terminating parental rights notwithstanding [Sibling 1's] express desire not to be adopted, the family court risked transforming [Sibling 1] into an orphan without any true purpose. That is an outcome the family court no doubt would be loath to achieve. *See In re Adoption of L.J.B.*, [18 A.3d 1098, 1108 (Pa. 2011)] ("[T]he purpose of involuntary termination of parental rights is to dispense with the need for parental consent to an adoption when, by choice or neglect, a parent has failed to meet the continuing needs of the child.").
>
> [fn3] Pursuant to [23 Pa.C.S.] § 2711(a)(1), "consent to an adoption shall be required of ... [t]he adoptee, if over 12 years of age."

*Id.* at 367. For these reasons, the *D.N.G.* Court concluded Legal Counsel's representation "did not satisfy the mandate of § 2313(a)" because "it was [Legal Counsel's] obligation to engage in client-directed advocacy on behalf of [Sibling 1] with regard to the child's preferred outcome." *Id.* (citing *L.B.M.*, 161 A.3d at 180).

Fourth, and of particular relevance to this appeal, the *D.N.G.* Court did not frame its conclusions in terms of the ineffective assistance of counsel. To the contrary, as noted above, the Court held that Legal Counsel's inactions deprived of Sibling 1 of his statutory right to counsel, and the Court did not analyze whether the deficiencies in Legal Counsel's representation affected

the outcome of the termination of parental rights proceeding. *Compare id.*, *with K.D.*, 871 A.2d at 829.

Here, the trial court appointed Legal Counsel to represent both Child and Sibling 1. At the January 17, 2019 hearing, as was discussed in *D.N.G.*, Legal Counsel failed to provide adequate representation of Sibling 1. At the time of the January 17, 2019 hearing, however, Legal Counsel had not had an opportunity to meet with Child, and the trial court continued its consideration of DHS's petitions for the involuntary termination of Mother's parental rights to Child and for a goal change until a second hearing. *See* N.T., 1/17/19, at 32.

Legal Counsel next appeared at the second hearing held on July 16, 2019. At the beginning of the hearing, an exchange occurred between the trial court and Legal Counsel, during which the trial court confirmed that Child was fifteen years old at the time, and that Child was competent to express his wishes and knew the difference between adoption and reunification. N.T., 7/16/19, at 9. Legal Counsel reported that he met Child at a residential facility and that similar to Sibling 1, "[Child] stated . . . that he would like to live with [Mother]. However, if that's not possible, that he would be fine living with [Sibling 1] with the current caretaker." *Id.* at 9-10. Legal Counsel then asked to be heard at a sidebar, which the trial court granted. *See id.* at 38. The sidebar conversation was not transcribed. *See id.*

DHS thereafter called Dr. Erica Williams, the psychologist who conducted a parental capacity examination of Mother and authored a report

- 14 -

on March 19, 2019. Dr. William opined that Mother "did not present with capacity to provide safety and permanency to her children." *Id.* at 52. Legal Counsel declined to cross-examine Dr. Williams. *Id.* at 75.

During re-cross examination of Dr. Williams by Mother's trial counsel, the trial court interrupted and engaged in a discussion with Legal Counsel on the record. *Id.* at 92. Based on an apparent agreement reached at the previous sidebar conference, Legal Counsel repeated Child's preference that Child "would like to live with" Mother, but was "fine with living with" Sibling 1 and Sibling 1's caretaker if that was not possible. *Id.* at 93. Upon further questioning by the trial court, Legal Counsel asserted that Child "did not state that he did not want to be adopted . . . . He just said that he would rather be with [Mother]." *Id.* at 95.

Thereafter, Legal Counsel did not ask further questions of Dr. Williams and DHS's other witness, Ashley Wolfe, the CUA caseworker who testified regarding the difficulties she had contacting Mother after the January 17, 2019 hearing. Indeed, it appears that Legal Counsel was no longer present at the July 16, 2019 hearing, as he was not asked to examine Dr. Williams on recross examination, cross-examine Ms. Wolfe, or present arguments at the conclusion of the hearing.

Having reviewed the parties' arguments, the relevant law in this appeal, and the record, we conclude that *D.N.G.* controls. Although Mother and the GAL did not object to Legal Counsel's representation of Child at the January 17, 2019 or the July 16, 2019 hearings, they raised the issue on appeal, and

this Court will consider the arguments. *See D.N.G.*, 230 A.3d at 366. Moreover, to the extent DHS argues that Legal Counsel properly discharged his duties by meeting with Child and setting forth Child's preference on the record, this Court has previously rejected similar arguments with respect to Sibling 1. *See id.* As in *D.N.G.*, Legal Counsel's performance, and in particular, his failure to advocate for permanent legal custody or argue that Child's consent was essential to adoption, was deficient. *See id.* Indeed, we conclude that the concerns raised in *D.N.G.* as to Sibling 1, who was eleven years old at the time the trial court terminated Mother's parental rights, resonate strongly here because Child was fifteen years old at the time of the hearing and Legal Counsel failed to participate at all toward the end of the July 16, 2019 hearing.

Lastly, just as *D.N.G.* compels the conclusion that Child was deprived of his statutory right to legal counsel under Section 2313(a), our decision in that case precludes this Court from engaging in a harmless error or prejudice analysis as suggested by DHS. *See id.* at 367. Therefore, we decline to address DHS's assertion that any deficiency in Legal Counsel's performance would not have altered the outcome of the termination proceeding.

Accordingly, we conclude that Mother's and the GAL's challenges to Legal Counsel's representation of Child under Section 2313(a) have merit and vacate the decree granting DHS's petition to terminate Mother's parental rights to Child. *See id.*

**Change in Permanency Goal**

Turning to the change in the permanency goal from reunification to adoption, Mother argues that the trial court erred by failing to consider whether "this family received all necessary services to achieve reunification." Mother's Am. Brief at 9. The GAL claims that the trial court deprived Child of his "best interest counsel" when the court denied her request to meet with Child after he moved in with Sibling 1 and Sibling 1's foster parent. GAL's Brief at 12. The GAL notes:

> [Child] has rights to maintain a relationship with [Mother] that is separate from Mother's rights to [Child.] This is a significant decision that has been ma[d]e for [Child] and should not be rush[ed] because the [trial court] thinks Mother has had enough time to meet her objectives. [Child] continues to reach out to [M]other by phone and by running away to Mother's home. [Child] stated that he did not want to be adopted and he wanted to live with his Mother. A viable alternative for this Child is permanent legal custody . . . by the current [foster parent].

*Id.* at 15. Both Mother and the GAL also allude to Legal Counsel's deficient representation of Child as a basis for relief in the goal change proceeding.[7]

*See id.*; Mother's Am. Brief at 13.

_____

[7] In contrast to *L.B.M.* and its progeny in the area of termination of parental rights, our courts have not recognized a Child's non-waivable statutory right to separate legal counsel under 42 Pa.C.S. § 6311 in dependency proceedings. *Cf. In re J'K.M.*, 191 A.3d 907, 910, 916 (Pa. Super. 2018) (holding that the trial court erred in denying a mother's petition for the appointment of separate legal counsel to represent a child in a dependency proceeding because there was a conflict between the child's best interests and legal interests, but noting that the mother raised the issue in the trial court). Moreover, while Mother and GAL both assert that Legal Counsel was deficient with respect to the decree terminating Mother's parental rights to Child and the order changing the permanency goal to adoption, neither has explored the distinctions

DHS responds that the record supported the trial court's conclusion that "it would be in Child's best interest to achieve permanency through adoption." DHS's Brief, 2294 EDA 2019 & 2295 EDA 2019, at 20. DHS notes that Ms. Wolfe, the CUA case manager testified that Child told her that he wanted to be adopted. *Id.* at 46 (citing N.T., 7/16/19, at 109).

The trial court addressed its decision to change the permanency goal from reunification to adoption. *See* Trial Ct. Op. at 26-30. The trial court addressed Mother's minimal compliance with DHS and the negative impacts on Child's life. *See id.* at 26-29. The trial court further examined Child's improvements following his placement in a foster home with Sibling 1 and how Child looks to the current foster parent as a primary caregiver. *Id.* at 29-30. The trial court further stated that "[t]he DHS witnesses were credible" and concluded that the goal change from reunification to adoption was proper. *Id.* at 30. Notably, however, the trial court did not address Child's preferences regarding adoption, as was testified to by Legal Counsel or Ms. Wolfe, and at no point in its comprehensive recitations of the evidence, did the trial court allude to Ms. Wolfe's testimony that Child told her he wanted to be adopted.

This Court reviews the trial court's decision for an abuse of discretion. *See In re R.M.G.*, 997 A.2d 339, 345 (Pa. Super. 2010).

> In order to conclude that the trial court abused its discretion, we must determine that the court's judgment was "manifestly

---

between Child's right to counsel in a termination proceeding under Section 2313 and in a dependency proceeding under Section 6311. For the reasons stated herein, we need not address this issue.

unreasonable," that the court did not apply the law, or that the court's action was "a result of partiality, prejudice, bias or ill will," as shown by the record. We are bound by the trial court's findings of fact that have support in the record. The trial court, not the appellate court, is charged with the responsibilities of evaluating credibility of the witness and resolving any conflicts in the testimony. In carrying out these responsibilities, the trial court is free to believe all, part, or none of the evidence. When the trial court's findings are supported by competent evidence of record, we will affirm, "even if the record could also support an opposite result."

*Id.* (citations omitted).

Section 6351(f.1) of the Juvenile Act states:

Based upon the determination made under subsection (f) [relating to matters to be determined at a permanency hearing] and all relevant evidence presented at the hearing, the court shall determine one of the following:

(1) If and when the child will be returned to the child's parent, guardian or custodian in cases where the return of the child is best suited to the safety, protection and physical, mental and moral welfare of the child.

(2) If and when the child will be placed for adoption, and the county agency will file for termination of parental rights in cases where return to the child's parent, guardian or custodian is not best suited to the safety, protection and physical, mental and moral welfare of the child.

(3) If and when the child will be placed with a legal custodian in cases where the return to the child's parent, guardian or custodian or being placed for adoption is not best suited to the safety, protection and physical, mental and moral welfare of the child.

42 Pa.C.S. § 6351(f.1)(1)-(3).

This Court has stated:

Although a goal change to adoption is a step towards termination of parental rights, it does not in fact terminate parental rights. When the court allows [DHS] to change the goal to adoption, it

- 19 -

has decided "[DHS] has provided adequate services to the parent but that he/she is nonetheless incapable of caring for the child and that, therefore, adoption is now the favored disposition.

Once the goal is changed to adoption, [DHS] is not required to provide further services.

*In re S.B.*, 943 A.2d 973, 978 (Pa. Super. 2008) (citations omitted).

With respect to permanent legal custody,

[t]he court may consider permanent legal custody, upon the filing of a petition that alleges the dependent child's current placement is not safe, and the physical, mental, and moral welfare of the child would best be served if [subsidized permanent legal custody] were granted. Upon receipt of this petition, the court must conduct a hearing and make specific findings focusing on the best interests of the child. The "court must find that neither reunification nor adoption is best suited to the child's safety, protection and physical, mental and moral welfare of the child" for the court to name the custodian a "permanent legal custodian."

*Id.* at 983 (citations omitted)

Instantly, as suggested above, there was uncertainty concerning Child's willingness or unwillingness to consent to adoption. N.T., 7/16/19, at 95 (indicating that Legal Counsel stated Child wanted to live with Mother and was "fine" living with Sibling 1, but did not state whether he wanted to be adopted). Because Child was fifteen at the time of the hearing and needed to consent to adoption, we agree with the GAL that the present record does not support the finding that the trial court appropriately considered Child's best interests or that its determination that a goal change to adoption was in Child's best interests. Even assuming reunification was not a viable permanency goal, we conclude that the trial court abused its discretion when changing the permanency goal to adoption without a more complete evaluation of and

clearer findings of fact regarding Child's willingness to consent to adoption. ***See R.M.G.***, 997 A.2d at 345. Accordingly, we vacate the order granting DHS's petition for a goal change.

## Conclusion

In sum, we vacate both the decree and order granting DHS's respective petitions for the termination of Mother's parental rights and to change the permanency goal to adoption. In light of our conclusion that Child did not have the benefit of his statutory right to legal counsel for the purpose of termination, we remand this matter for a new hearing on DHS's petitions. ***See D.N.G.***, 230 A.3d at 368. The trial court may determine whether to appoint substitute counsel for Child or to direct Legal Counsel to determine and to advocate zealously for Child's legal interests. ***See id.*** The trial court, upon consideration of the evidence at the hearing, shall also enter new findings of fact and conclusions of law as to the appropriateness of a goal change.

Decree and order vacated. Cases remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/19/20